# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | |
|---|---|
| Stacy Haire<br>Leesburg, GA<br>　　Plaintiff,<br><br>v.<br><br>Carlos Del Toro<br>Secretary, U.S. Department of the Navy<br><br>　　Defendant. | Case No.: _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW**, Plaintiff Stacy Haire ("Plaintiff" and/or "Ms. Haire"), by undersigned counsel, and complains against Defendant Carlos del Toro, in his capacity as Secretary, United States Navy, as follows:

## NATURE OF THE ACTION

1. Ms. Haire brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and §1981(a) ("Title VII").

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged herein occurred in this district.

## PARTIES

4. Ms. Haire is a female citizen of the State of Georgia, residing at 153 Hawkstead Drive, Leesburg, Georgia 31763.

5. At all relevant times, Ms. Haire has been Defendant's employee within the meaning of and entitled to the protections of Title VII.

6. Ms. Haire's duty location was Albany, GA.

7. Defendant Carlos del Toro is named in his official capacity as United States Secretary of the Navy. At all relevant times, Defendant has been Ms. Haire's employer within the meaning of and subject to the requirements of Title VII.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e *et. seq,* and 42 U.S.C. § 12117(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. On May 14, 2019, Ms. Haire timely filed a formal EEO complaint of discrimination.

10. Defendant issued a Final Agency Decision ("FAD") on May 20, 2022.

11. On June 21, 2022, Ms. Haire timely appealed the FAD to the United States Department of the Navy, Equal Employment Opportunity Commission branch (the "Commission").

12. On September 5, 2023, the Commission issued a decision and notice of right to file a civil action.

13. Ms. Haire has therefore exhausted her administrative remedies, and she timely files this Complaint within 90 days of receiving the Commission's Decision and notice of right to file a civil action.

## FACTUAL ALLEGATIONS

**Ms. Haire is a member of a protected class.**

14. Ms. Haire is an African American woman.

15. At all relevant times, Defendant was aware of Ms. Haire's race and sex based on her physical appearance.

**Ms. Haire has a successful career in the federal service.**

16. In September of 2015, Ms. Haire began working for the United States Department of the Navy (the "Agency") as a Pass & ID Assistant at the GS-05 pay rate.

17. One year later, Ms. Haire was hired as an HR Assistant in the Labor Relations/Employee Relations ("LER") Civilian Human Resources Office ("CHRO").

18. After approximately one year in the position, Ms. Haire was promoted to a GS-06.

19. Ms. Haire's primary duties were overseeing the benefits program, which involved briefing new Agency employees on their available benefits. Ms. Haire also oversaw the Awards Program, which involved printing all certificates and processing all time off and monetary awards for every Command (approximately seven total) according to regulation.

20. Ms. Haire was the only HR Assistant who briefed new employees, a task usually assigned to HR Specialists.

21. Ms. Haire was also in charge of full retirement and disability retirement for all personnel, conducting intake, and directing employees' questions to the appropriate HR professional.

22. During her time in LER, Ms. Haire has regularly taken on additional duties above and beyond her job description, including assisting with FMLA letters and Open Season Health Fairs for her Command as well as other Commands. Ms. Haire takes on these additional duties and

tasks after hours for no additional pay. Instead, she performs these additional tasks to develop professionally and position herself for a potential promotion.

23. In 2017, Ms. Haire began assisting Jay Mason, Drug Testing Coordinator, with the Agency's Drug Demand Reduction Program, the name for the drug testing program within the Agency's workers' compensation department, at the direction of the General on base at Camp Lejeune in North Carolina.

24. Mr. Mason informally trained Ms. Haire on how to run the Drug Demand Reduction Program and drug testing became a part of Ms. Haire's regular duties for two and a half years, concluding in 2019 when the Drug Program Coordinator determined she needed the required training to proceed further.

25. The Agency never provided Ms. Haire with the required training, so the Drug Program Coordinator determined she could no longer run the Drug Demand Reduction Program.

26. In addition to her exemplary career in federal service, Ms. Haire also had a distinguished career in the U.S. Army Reserves.

27. Ms. Haire joined the Army Reserves in 1986, and in 2005 became a non-commissioned officer. During her time with the Army, Ms. Haire attended advanced leadership courses and received training as an Equal Employment Opportunity representative during her deployment to Kosovo in 2009.

28. Ms. Haire utilized this training to teach courses on issues related to ethics and sexual harassment to her unit in Tifton, Georgia. She also attended the Unit Prevention Leader Course in 2013 and conducted urinalysis for the military, receiving a recertification every two years.

**Ms. Haire applied for the Human Resources Specialist position in January of 2019**

29. On January 7, 2019, Ms. Haire's then first-line supervisor, Supervisory Human Resources Specialist Amy Clark ("Ms. Clark"), advertised an HR Specialist under Announcement Number DE 10384081-19-SMS, with an open period of January 7, 2019, to January 14, 2019, on USAJobs.com.

30. The Agency also posted the position using the Defense Industrial Base ("DIB"), Major Range and Test Facilities Direct Hire Authority ("DHA"), which could be filled at a GS-7 or GS-9 grade level.

31. The DHA authorizes the Agency to directly appoint qualified applicants to positions in the competitive service.

32. Ms. Haire applied for the position by sending her resume and her undergraduate and graduate transcripts directly to Ms. Clark by email.

**The Agency did not select Ms. Haire for the position. Instead, it selected the less-qualified Bridget Prince.**

33. Ms. Clark selected Bridget Prince ("Ms. Prince"), a white female, for the position.

34. Ms. Clark did not interview the candidates, did not convene a hiring panel, and did not conduct reference checks for the top two candidates.

35. Ms. Clark made the decision unilaterally and outside of the traditional hiring process, later stating that re-competition was not necessary because the position was a voluntary downgrade for Ms. Prince.

36. After reviewing applicant resumes, Ms. Clark determined that Ms. Haire was one of the top two candidates.

37. Despite this, Ms. Clark further determined that she would not have hired Ms. Haire even if her selectee, Ms. Prince, had turned down the position.

38. Ms. Clark called Ms. Haire to inform her that she was not selected for the position on February 20, 2019.

39. Ms. Clark told Ms. Haire she had selected another applicant because she wanted someone who was "more experienced."

40. As further grounds for not selecting Ms. Haire, Ms. Clark cited alleged times where Ms. Haire "could have taken opportunities to develop herself."

41. In fact, Ms. Haire, throughout her career had assiduously taken every opportunity to develop her skills but was often stymied in those opportunities by Ms. Clark herself.

**Ms. Haire was more qualified than Ms. Prince for the position.**

42. According to the Vacancy Announcement, educational requirements for the HR Specialist position varied based on grade level.

43. A GS-07 position required "one year of graduate level education or superior academic achievement," while a GS-09 required a "Master's or equivalent graduate degree or 2 full years of progressively higher-level education leading to such a degree."

44. At the time of her application, Ms. Haire had a master's degree in human resources management.

45. Ms. Prince did not have one full year of graduate level education or superior academic achievement. Ms. Prince also did not have a master's degree or two full years of progressively higher-level education leading to such degree.

46. As a result, Ms. Prince did not meet the minimum requirements for the position under either pay rate or grade.

47.     The Vacancy Announcement stated that applicants who qualified based on education, or a combination of education and experience must submit a college transcript or an appropriate course listing.

48.     Ms. Prince only submitted a resume.

49.     At the time of the decision, Ms. Haire had two and a half years of experience as an HR Assistant in LER.

50.     At the time of the decision, Ms. Prince had only 13 months of experience as an HR Assistant – less than half the experience of Ms. Haire.

51.     At the time of the decision, Ms. Clark was more qualified for the position than Ms. Prince.

**Ms. Clark went out of her way to hire less qualified white women as HR Specialists.**

52.     Ms. Clark also went out of her way to train and hire Amanda Cruz (white woman).

53.     Like Ms. Prince, Ms. Cruz did not initially work for Ms. Clark.

54.     Like Ms. Prince, Ms. Clark actively supported and eventually recruited Ms. Cruz.

55.     Upon information and belief, Ms. Cruz only had a high school diploma when she was hired as an HR Specialist, GS-07, and Ms. Cruz had not obtained any higher-level education.

56.     A supervisor of the Drug Demand Reduction Program, Joe Blanton, described Ms. Cruz as "smart but lazy as hell" during her time as an HR Assistant, and said that she would not assist him with anything.

57.     In contrast, Ms. Haire has received a rating of Satisfactory or better in all of her annualized performance evaluations.

58.     Ms. Haire's colleagues who worked as HR Specialists agreed that she was qualified for an HR Specialist position.

**Ms. Haire was not selected because she is a black woman.**

59. On information and belief, after the submission deadline, Ms. Clark called Ms. Prince to tell her that the position was hers but that she needed to "beef up" her resume.

60. This was not the first time that Ms. Haire was not selected for a promotion. Ms. Haire had applied for a promotion to HR Specialist twice prior to the February 2019 non-selection at issue in this case. Each time, Ms. Haire was part of a selection process that ultimately selected a candidate who was not a black woman.

61. At the time of Ms. Haire's non-selection, there were no black female HR Specialists in LER.

62. Ms. Clark departed from standard Agency policy and standard hiring procedure, did not confer with her supervisor, and found a loophole in the federal government's merit-based hiring system to select her hand-picked, white, female candidate. Given Ms. Haire's superior qualifications, strong performance, and the conflicting explanations offered by Ms. Clark for her non-selection, it is clear that Ms. Haire was not selected because she is a black woman.

## COUNT I – Race & Sex Discrimination
**In violation of 42 U.S.C. §§ 2000(e),** *et seq.*

63. Ms. Haire re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

64. Defendant did not select Ms. Haire for the HR Specialist position based on her race and sex. As alleged herein, Defendant instead chose a candidate, Ms. Prince, who was less qualified than Ms. Haire, and who was not an African American or black woman.

65. By and through its conduct, Defendant discriminated against Ms. Haire based on race in violation of Title VII.

66. By and through its conduct, Defendant discriminated against Ms. Haire based on sex in violation of Title VII.

67. As a black female, Ms. Haire was discriminated against on the basis of her race alone, and on the combined basis of her race and sex.

68. Defendant's actions were intentional, reckless, and malicious.

69. As a result of Defendant's discriminatory treatment of her, Ms. Haire has suffered and continues to suffer damages, including but not limited to lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in her favor and against Defendant on all claims brought herein and award Plaintiff a retroactive promotion or front pay; lost wages and benefits; compensatory damages; liquidated damages; pre- and post-judgment interest; injunctive relief; an amount equal to the tax on any award; attorney's fees; litigation costs; and any other relief as is just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Ms. Haire respectfully demands a trial by jury on all counts.

[*Signature Page Follows*]

Respectfully submitted,

November 29, 2023

*[signature]*
KENNETH E. BARTON III
Georgia Bar No. 301171

COOPER, BARTON & COOPER, LLP
170 COLLEGE STREET
MACON, GEORGIA 31201
TELEPHONE: (478) 841-9007
FACSIMILE: (478) 841-9002
KEB@COOPERBARTON.COM

ALAN LESCHT AND ASSOCIATES, P.C.
1825 K ST. NW, SUITE 750
WASHINGTON, D.C. 20006
TELEPHONE: (202) 539-9308
TAMARA.SLATER@LESCHTLAW.COM
DAVID.BLUM@LESCHTLAW.COM

TAMARA L. SLATER
D.C. Bar No. 1616337
*To Seek Admission Pro Hac Vice*

DAVID W. BLUM
D.C. Bar No. 1029697
*To Seek Admission Pro Hac Vice*

*Attorneys for Plaintiff*