IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| STACY HAIRE, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 1:23-CV-202 (LAG) |
| CARLOS DEL TORO, SECRETARY, U.S. DEPARTMENT OF THE NAVY, | : |
| Defendant. | : |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. 14). For the reasons below, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## FACTUAL BACKGROUND

This case involves allegations of sex and gender discrimination in the workplace. (*See* Doc. 9).[1] Plaintiff, a Black female, began working for the United States Department of the Navy (the Agency) at the Marine Corps Logistics Base (MCLB) in Albany, Georgia in September 2015. (Doc. 14-2 ¶ 1; Doc. 24-1 ¶ 1; *see* Doc. 9 ¶¶ 6, 14, 16). Plaintiff started as a Pass and ID Assistant at the GS-05 pay grade; and, after a year, she was hired as an HR Assistant in the Labor Relations/Employee Relations Civilian Human Resources Office (LER CHRO). (Doc. 14-2 ¶ 2; Doc 24-1 ¶ 2). Approximately one year into that role, Plaintiff was promoted to the GS-06 grade level. (Doc. 14-2 ¶ 3; Doc. 24-1 ¶ 3). As an HR Assistant, Plaintiff assisted employees with questions about benefits and retirement. (Doc. 19 at 27:3–20; *see* Doc. 18 at 14:25–15:12). Amy Clark (Clark) was Deputy Director and Plaintiff's first level supervisor. (Doc. 14-2 ¶ 18; Doc. 24-1 ¶ 18).

---

[1] The Court derives the relevant facts from the Parties' Statement of Material Facts, responses, and the record. When evaluating the Motion for Summary Judgment, the Court construes the facts in the light most favorable to Plaintiff, the nonmoving party. *See* Fed. R. Civ. P. 56; *Jacoby v. Baldwin County*, 835 F.3d 1338, 1342 (11th Cir. 2016) (citations omitted).

In January 2019, Plaintiff applied for an HR Specialist position (the Position) in the LER CHRO. (Doc. 14-2 ¶ 4; Doc 24-1 ¶ 4). As MCLB is a defense industrial base, the job announcement was issued pursuant to its Direct Hire Authority (DIB-DHA), a hiring authority granted by Congress. (Doc. 14-2 ¶ 15; Doc. 24-1 ¶ 15; Doc. 14-4; Doc. 20 at 15:2–3). As anyone can be hired under the direct hiring authority for a defense industrial base, using the DIB-DHA enables the Agency to "reach a wider population of candidates" because it bypasses certain qualifications that would otherwise be required. (Doc. 20 at 15:17–22, 17:16–18:8).

The process for hiring under the DIB-DHA is as follows: The hiring manager makes the decision to use the DIB-DHA, and the Office of Civilian Human Resources (OCHR) posts a vacancy announcement. A selecting official reviews the applications, selects a candidate for hire, and sends a selection letter to the Human Resource Director (HR Director) who reviews the process used and the ultimate selection. If the HR Director has concerns, she would then inform the selecting official of those concerns.

Here, once Clark, the hiring manager, determined to use the DIB-DHA, OCHR listed the Position on USAJobs.com. (Doc. 18 at 21:1–20). The application was open on USAJobs.com from January 7 through 14, 2019. (Doc. 14-2 ¶ 6; Doc. 24-1 ¶ 6; Doc. 24-6; Doc. 14-3). Clark acted as the selecting official. (Doc. 14-2 ¶ 18; Doc. 24-1 ¶ 18). Over 100 candidates applied for the Position, and Clark determined that the majority of the applicants were not minimally qualified. (Doc. 14-2 ¶ 22; Doc. 24-1 ¶ 22). Ultimately, Clark considered three top candidates: Plaintiff, Bridget Prince,[2] and a candidate with a law degree who ultimately was not considered because he or she relocated. (Doc. 14-2 ¶ 23; Doc. 24-1 ¶ 23).

Plaintiff's application included her resume, undergraduate transcript, and graduate transcript by email to Clark. (Doc. 14-2 ¶ 17; Doc. 24-1 ¶ 17; Doc. 24-6; Doc. 14-3). Plaintiff received her Master's in Human Resource Management in May 2009, served as a Pass and ID Clerk (GS-05) from August 2015 to September 2016, and an HR Assistant

---

[2] Bridget Prince got married in 2021 and changed her name to Bridget Bennett. (*See* Doc. 16). Because the pleadings refer to her as Bridget Prince, the Court refers to her by her maiden name—Prince.

(GS-06) in LER from September 2016 to January 2019. (*See* Doc. 14-13). Prince's application included only her resume. (Doc. 16 at 29:12–13, 32:20–23). Prince served as a Human Resource Assistant (GS-07) from August 2014 to September 2015, an Administrative Officer-Management and Program Analyst (GS-09) from September 2015 to June 2018, and a Supervisory Management and Program Analyst (GS-11) from June 2018 to January 2019. (*See* Doc. 24-7). Thus, Prince had more than four years of specialized experience at GS-07 or higher and certainly was qualified for the Position. Additionally, Prince listed 22 credit hours towards a Master of Administration Services and 6 credit hours towards a Master of Marriage and Family Therapy from the University of Nevada–Las Vegas on her resume. (Doc. 24-7 at 8). Clark ultimately selected Prince, a White female, for the Position at the GS-09 grade level. (Doc. 14-2 ¶ 24; Doc. 24-1 ¶ 24).

The person hired for the Position could be hired at a GS-07 or GS-09 grade level depending on her qualifications. While the Position could "be filled at any grade level," the Vacancy Announcement set forth the qualifications for each grade. For GS-07, the announcement states, in pertinent part,

> Your resume must also demonstrate at least one year of specialized experience at or equivalent to the GS-05 grade level or pay band in the Federal service or equivalent experience in the private or public sector. Specialized experience must demonstrate the following: Assisting senior specialists in performing administrative, evaluative, or technical work concerned with establishing and maintaining employer-employee relationships.

(Doc. 24-6 at 4). For GS-09, the announcement states, in pertinent part,

> Your resume must also demonstrate at least one year of specialized experience at or equivalent to the GS-07 grade level or pay band in the Federal service or equivalent experience in the private or public sector. Specialized experience must demonstrate the following: Performing administrative, evaluative, or technical work concerned with establishing and maintaining employer-employee relationships that contribute to satisfactory productivity, motivation, morale, and discipline.

3

(*Id.*). The announcement also provided an alternative manner of qualifying for the position. The announcement stated: "In lieu of specialized experience, applicants may qualify based on equivalent combination of education and experience for grade levels and positions for which both education and experience are acceptable. Please go the Education section for further details." (*Id.*).

During the relevant time period, Clark reported to Katrina Stanfill (Stanfill), the Human Resources Director. (Doc. 14-2 ¶ 25; Doc. 24-1 ¶ 25). After making her selection for the Position, Clark sent Stanfill a selection letter, notifying her that she had selected Prince who she believed to be the best qualified. (Doc. 14-2 ¶ 26; Doc. 24-1 ¶ 26). Stanfill reviewed the materials but did not provide any input on the decision to hire Prince and was not otherwise involved in making the decision. (Doc. 14-2 ¶ 26; Doc. 24-1 ¶ 26). On February 20, 2019, Clark informed Plaintiff that she was not selected for the Position, explaining that Clark was seeking someone with more experience. (Doc. 14-2 ¶ 29; Doc. 24-1 ¶ 29).

On March 5, 2019, Plaintiff made initial contact with the Agency's EEO Office in connection with her non-selection. (Doc. 14-2 ¶ 30; Doc. 24-1 ¶ 30). On May 14, 2019, Plaintiff filed a formal complaint of discrimination, where she alleged discrimination on the basis of (1) race (Black/African American/Indian), (2) national origin (Black/Indian), (3) religion (Baptist), (4) sex (female), (5) age (DOB 3/3/1967), and (6) disability (mental and physical). (Doc. 14-2 ¶ 31; Doc. 24-1 ¶ 31). On May 29, 2019, the Agency issued a "Notice of Acceptance and Acknowledgment" of Plaintiff's EEO complaint and referred the matter for investigation. (Doc. 14-2 ¶ 32; Doc. 24-1 ¶ 32). Plaintiff elected to proceed before an EEOC Administrative Judge (AJ). (Doc. 14-2 ¶ 33; Doc. 24-1 ¶ 33). The Agency moved to dismiss her claims, and on November 5, 2020, the AJ granted the Agency's motion in part, dismissing her non-selection claims based on religion and disability. (Doc. 14-2 ¶ 33; Doc. 24-1 ¶ 33). The AJ found that "there are material factual disputes surrounding [Plaintiff's] non-selection, and whether her race, sex, and/or age were factors in her non-selection." (Doc. 14-2 ¶ 34; Doc. 24-1 ¶ 34). On March 21, 2022, Plaintiff requested, through counsel, that the Agency issue a Final Agency Decision (FAD) in lieu

of proceeding to a hearing. (Doc. 14-2 ¶ 35; Doc. 24-1 ¶ 35). On March 21, 2022, the AJ returned the matter to the Agency for issuance of a FAD in accordance with 29 C.F.R. § 1614.110. (Doc. 14-2 ¶ 36; Doc. 24-1 ¶ 36). On May 20, 2022, the Agency issued a 19-page FAD, concluding that Plaintiff's non-selection was not the result of discrimination based on race, sex, religion, age, and/or disability. The Agency informed Plaintiff that she had the right to file a Notice of Appeal with the EEOC's Office of Federal Operations (OFO) within thirty days of receipt of the FAD, or to commence a lawsuit in U.S. District Court within 90 days of receipt of the FAD. (Doc. 14-2 ¶ 37; Doc. 24-1 ¶ 37). On June 21, 2022, Plaintiff timely filed an appeal with OFO. (Doc. 14-2 ¶ 38; Doc. 24-1 ¶ 38). On August 31, 2023, OFO affirmed the Agency's FAD, finding no discrimination. (Doc. 14-2 ¶ 39; Doc. 24-1 ¶ 39). OFO informed Plaintiff that she had a right to file a civil action in U.S. District Court within 90 days of receipt of the decision. (Doc. 14-2 ¶ 39; Doc. 24-1 ¶ 39).

## PROCEDURAL BACKGROUND

On November 29, 2023, Plaintiff timely filed this employment discrimination action against Defendant Carlos del Toro, in his capacity as Secretary of the United States Navy. (Doc. 1). Pursuant to Federal Rule of Civil Procedure 15(a)(2) and with Defendant's consent, Plaintiff filed an Amended Complaint (Complaint), the operative complaint in this case, on January 31, 2024. (Doc. 9). Therein, Plaintiff alleges race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. (Title VII) and 42 U.S.C. § 1981(a). (*Id.* ¶¶ 1, 63–67). Plaintiff alleges that she was discriminated against "on the basis of her race alone," as well as "on the combined basis of her race and sex." (*Id.* ¶ 65). Plaintiff seeks "a retroactive promotion or front pay; lost wages and benefits; compensatory damages; liquidated damages; pre- and post-judgment interest; injunctive relief; an amount equal to the tax on any award; attorney's fees; litigation costs; and any other relief as is just and proper." (*Id.* at 9). On February 15, 2024, Defendant filed its Answer, including affirmative defenses. (Doc. 10). On October 23, 2024, Defendant filed its Motion for Summary Judgment. (Doc. 14). After receiving extensions, Plaintiff and Defendant filed their Response and Reply, on November 20, 2024 and December 18,

2024, respectively. (Docs. 21, 24, 25, 26). The Motion for Summary Judgment is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (quoting Fed. R. Civ. P. 56(a)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). At summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007)); *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018); *Whitehead*, 979 F.3d at 1328. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact or by demonstrating that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (per curiam). If the movant meets their initial burden, the nonmoving party must

demonstrate that there is a genuine dispute for trial. *Lamar v. Wells Fargo Bank*, 597 F. App'x 555, 557 (11th Cir. 2014) (per curiam) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)). The nonmovant must "go beyond the pleadings and . . . present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating specific facts showing a genuine issue for trial." *Id.* (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

**I.     Discrimination in Violation of 42 U.S.C. § 1981**

In the first paragraph of the Amended Complaint, Plaintiff states that she "brings this action under Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e et seq. and § 1981(a)[.]" (Doc. 9 ¶ 1). In its Motion for Summary Judgment, Defendant correctly argues that because Plaintiff, a federal employee, is suing her employer, a federal agency, she cannot bring a claim against it pursuant to 42 U.S.C. § 1981. (Doc. 14-1 at 10–11). "Section 1981 . . . does not provide a cause of action for discrimination under color of federal law." *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998); *Johnson v. United States, Dept. of Just.*, 694 F. App'x 748, 749 (11th Cir. 2017) ("Because all of the defendants in this case are federal agencies or officials, [Plaintiff's] § 1981 claims were due to be dismissed.").

Moreover, Plaintiff does not address Defendant's argument in her Response. (*See* Doc. 24). Thus, even if Plaintiff did have a § 1981 claim, Plaintiff abandoned it. *See Moore v. Camden Prop. Tr.*, No. 1:17-CV-01655-ELR, 2019 WL 11441431, at *3 (N.D. Ga. Mar. 26, 2019) (collecting cases for the proposition that "when an argument is raised that a claim is subject to dismissal, and the nonmoving party fails to respond to such an argument, such claims are deemed abandoned"), *aff'd*, 816 F. App'x 324 (11th Cir. 2020); *see also Wood v. City of Warner Robins*, No. 5:19-CV-00319-TES, 2022 WL 987991 (M.D. Ga. Mar. 31, 2022) (granting summary judgment to Defendants with respect to Plaintiff's abandoned retaliation claim); *LaFleur v. Hugine*, 587 F. App'x 536, 540 (11th Cir. 2014) (per curiam) ("[F]ailure to brief and argue th[ese] issue[s] during the proceedings before the district

court is grounds for finding that the[se] issue[s] ha[ve] been abandoned.") (first alteration in original) (citation omitted).

## II.     Race and Sex Discrimination in Violation of Title VII

Plaintiff alleges that (1) "Defendant did not select [Plaintiff] for the HR Specialist position based on her race and sex[;]" and that (2) "Defendant discriminated against [Plaintiff] . . . on the basis of her race alone, and on the combined basis of her race and sex." (Doc. 9 ¶¶ 64, 65). Defendant argues that there is no genuine issue of material fact as to either claim. (*See* Doc. 14-1).

Under Title VII's federal-sector provision, "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race[] . . . [or] sex[.]" 42 U.S.C. § 2000(e)-16(a). "Free from any discrimination" means that "personnel actions must be made in a way that is not tainted by differential treatment based on a protected characteristic." *Buckley v. Sec'y of Army*, 97 F.4th 784, 793 (11th Cir. 2024) (internal quotations and citation omitted). "[A] federal employer violates [Title VII] if it allows race [or sex] discrimination to contribute to any personnel action, even if that discrimination was not the but-for cause of the ultimate decision." *Terrell v. Sec'y, Dept. of Veterans Affs.*, 98 F.4th 1343, 1352 (11th Cir. 2024) (second alteration in original) (internal quotations and citation omitted); *see Rosado v. Sec'y, Dept. of Navy*, 127 F.4th 858, 862 (11th Cir. 2025) ("[T]he text[] of the federal-sector provisions of Title VII . . . [doesn't] require a plaintiff to prove that unlawful discrimination was a but-for cause of [the] adverse employment action."). For a federal employee to defeat summary judgment, she "must show only that unlawful discrimination 'play[ed] any part' in the challenged employment decision." *Rosado*, 127 F.4th at 862 (quoting *Buckley*, 97 F.4th at 794–95). Plaintiff can substantiate a Title VII violation in the federal-sector "if she shows that race or [sex] discrimination 'tainted' the hiring process, even if it was not the but-for cause of her non-selection." *Terrell*, 98 F.4th at 1352 (quoting *Babb v. Sec'y, Dept. of Veterans Affs.*, 992 F.3d 1193, 1199 (11th Cir. 2021)).

Where discrimination is the but-for cause of Plaintiff's non-selection she "may be entitled to retrospective relief, like compensatory damages and back pay[.]" *Terrell*, 98

F.4th at 1352 (citation omitted). On the other hand, where Plaintiff proves that "discrimination 'tainted' the hiring process[] but not that it was a but-for cause of her non-selection, she is not entitled to damages stemming from her non-selection." *Id.* (citation omitted). Thus, even if Plaintiff proves that race or sex-plus-race discrimination tainted the decision-making process, she is not necessarily entitled to all remedies under § 2000(e)-16(a). *See id.* "[T]he court must match any remedy to the specific injury." *Buckley*, 97 F.4th at 794 (citation omitted).

Plaintiff is not entitled to retrospective relief on her non-selection claim as she does not argue and the record does not establish that race or sex was (or both were) a but-for cause or causes of her non-selection. Where a plaintiff presents "no direct evidence of . . . discrimination" and where "no record evidence supports the notion that race or [sex] discrimination . . . was a but-for cause of her non-selection[,]" a plaintiff may not seek damages for her non-selection. *Terrell*, 98 F.4th at 1352. Here, Plaintiff presents no direct evidence of race or sex discrimination. *See id.* Rather, Plaintiff argues that the circumstantial evidence in the record creates a genuine issue of material fact as to "whether discriminatory animus played any role in []Clark's decision to select []Prince over []Haire for the position." (Doc. 24 at 16). As discussed below, there is a genuine issue of material fact as to the requisite qualifications for the position such that, construing the facts in the light most favorable to Plaintiff, the Court cannot find that race did not taint the selection. There is no such genuine issue of material fact as to the sex discrimination claim in that Plaintiff has presented no circumstantial evidence that sex discrimination tainted the selection process.[3]

As to the race discrimination claim, Plaintiff alleges that Clark "(i) specially requested to deviate from the competitive hiring process, (ii) relied solely on resume submissions for her 'total' evaluation, (iii) selected a [W]hite female candidate who did not meet the minimum educational requirements, and (iv) was friends with and personally

---

[3] This is irrespective of the fact that the Position was offered to another individual of the same sex as the Court recognizes that a sex-discrimination claim does not necessarily fail just because the position was ultimately offered to another individual of the same sex. *See Terrell*, 98 F.4th at 1353.

encouraged the selected candidate." (Doc. 24 at 10). None of these allegations, separately, indicate that race played any part in the selection of Prince for the position. However, taken together, the record paints just enough of a picture that a reasonable jury could find that race played a part in Plaintiff's non-selection.

According to Plaintiff, the use of the DIB-DHA, "gave []Prince, a non-minority applicant, an edge." (*Id.* at 12). Specifically, Plaintiff asserts that Clark deviated from standard procedures of a selection process by not convening an interview panel or interviewing candidates, not checking references, and not reviewing the candidates' performance evaluations. (Doc. 18 at 13:11–19, 39:2–9). Plaintiff further points out that Prince was an arguably close acquaintance of Clark's, and Clark encouraged Prince to apply for the Position before posting it. (Doc. 18 at 8:9–22; Doc. 17 at 28:22–29:7, 35:11–20). Furthermore, while Plaintiff testified that she never heard Clark make any comments about Plaintiff's race, she argues that Clark "infantilized [Plaintiff] by comparing her to a newborn, despite years of experience and superior qualifications to [Prince]" and that this was "an offensive characteristic rife with racial animus." (Doc. 24 at 13).

First, with regard to the argument that Plaintiff used the DIB-DHA process in a discriminatory manner, Plaintiff asserts that, "[o]f the last three selection decisions for the HR Specialist position, []Clark used Direct Hire Authority each time[.]" (Doc. 24 at 12). Plaintiff cites to Doc. 17 at 25:2–11 and Doc. 18 at 23:10–21 when making this assertion, but neither of these record cites makes any reference to Clark's use of the DIB-DHA. The Court's own review of the record indicates that, other than Prince, the two most recently hired HR Specialists were Amanda Cruz and Samuel Edwards. Clark was not the selection official who hired Cruz, and "[Edwards] was hired using a Veteran's direct hire authority, which is different than" the DIB-DHA used to hire for the Position. (Doc. 18 at 26:2–21). Furthermore, Clark explained that she used the DIB-DHA rather than the competitive process under which Plaintiff would have had a preference—direct examination recruitment—based on a policy directive. (Doc. 17 at 34:2–9). During Clark's deposition, Plaintiff's counsel asked Clark a series of questions about "competitive hiring" and established that Plaintiff, as a veteran, would have had priority over Prince if Clark had

10

used direct examination recruitment rather than the DIB-DHA. (Doc. 17 at 29:17–33:8). Counsel then asked: "So if you hadn't used direct-hire authority, it would have been a direct examination decision, wouldn't it?" (*Id.* at 33:9–11). Clark responded, "No, ma'am," and explained that "OCHR San Diego, who processes [MCLB's] hiring actions, made a decision that those commands that have the direct-hiring authority options, they would not be able to request direct examination recruitment actions because they did have the direct-hiring authority that allowed them to reach a great number of potential candidates." (*Id.* at 33:12, 34:12–18). Thus, that Clark elected to use the DIB-DHA process is not evidence that race played any role in the selection process.

Next, even accepting that Clark relied solely on the resumes when making evaluations, standing alone, there is no taint of race apparent in this action. Not only was Clark familiar with both Plaintiff's and Prince's specialized experience as both, at some point, had worked in the LER-CRHO, she was also familiar with the requirements of Prince's then-position as a Supervisory Management and Program Analyst at the MCLB. (Doc. 17 at 38:11–20; Doc. 18 at 6:20–7:3).

The Parties disagree on whether the educational qualifications set forth in the Vacancy Announcement were among the minimal qualifications required for the Position. According to Plaintiff, a candidate had to meet both the specialized experience and educational qualifications to be deemed minimally qualified. (Doc. 24 at 2). Defendant argues that, based on the Vacancy Announcement language stating that, "[i]n lieu of specialized experience, applicants may qualify based on an equivalent combination of education and experience for grade levels and positions for which both education and experience are acceptable[,]" education was only considered if the specialized experience requirement was not met. (*See* Doc. 24-6 at 4). The best evidence of the requirements—the Vacancy Announcement—is ambiguous at best. For example, the formatting of the Vacancy Announcement would indicate that Education was one of the requirements for hiring; but the inclusion of some of the information under the "Requirements" [4] subheader

---

[4] Under a bolded section titled "Requirements" are the following bolded sub-headers in slightly smaller fonts: "Conditions of Employment[,]" "Qualifications[,]" "Education[,]" "Additional

would indicate that the formatting has no significance. At the same time, language in the "Required Documents" section would indicate that there are three ways to qualify—by specialized experience, education, or a combination of both. (*See* Doc. 24-6 at 5–6). The first line under the header states, "A COMPLETE RESUME IS REQURIED." (*Id.* at 5). Further down in that section, the Vacancy Announcement asks, "ARE YOU QUALIFYING BASED ON EDUCATION OR A COMBINATION OF EDUCATION AND EXPERIENCE?" (*Id.*). If so, the applicant is required to submit a copy of a college transcript or course listing. (*Id.*). Based on the wording in this section, a party is only required to submit a transcript if they are attempting to qualify based on education or a combination of education and experience.

Regardless of the confusion engendered by the drafting of the Vacancy Announcement, construing the evidence in the light most favorable to Plaintiff and assuming that the educational requirement had to be met, there is a genuine issue of material fact as to whether Prince was qualified for the position. Considering only her specialized experience, Prince certainly was qualified for hire. According to the Vacancy Announcement, "[v]acancies filled from this announcement may be filled at any grade level[.]" (Doc. 24-6 at 4). Thus, the Court considers whether Prince was qualified at any grade level. To be hired at the GS-07 grade level, Prince was required to have "at least one year of specialized experience at or equivalent to the GS-05 grade level or pay band in the Federal service or equivalent experience in the private or public sector." (Doc. 14-2 ¶ 7; Doc. 24-1 ¶ 7). "Specialized experience at or equivalent to the GS-05 grade level" meant "[a]assisting senior specialists in performing administrative, evaluative, or technical work concerned with establishing and maintaining employer-employee relationships." (Doc. 14-2 ¶ 8; Doc. 24-1 ¶ 8). Prior to applying, Prince served as a Human Resource Assistant (GS-07) from August 2014 to September 2015, an Administrative Officer-Management and Program Analyst (GS-09) from September 2015 to June 2018, and a Supervisory

---

Information[,]" "How You Will Be Evaluated[,]" "Background checks and security clearance[,]" and "Security Clearance[.]" (Doc. 14-3 at 2–4; Doc. 24-6 at 3–5). Following the "Security Clearance" section is another bolded header, "Required Documents." This header is in the same size font as the "Requirements" header.

Management and Program Analyst (GS-11) from June 2018 to January 2019. (*See* Doc. 24-7). Thus, Prince had more than four years of specialized experience at GS-07 or higher and certainly was qualified for the Position. Based solely on experience, Prince was qualified for the Position and to be hired at the higher GS-09 grade level.

Considering the educational requirement, it is unclear if Prince was minimally qualified. To be hired at a GS-07, the minimal educational requirement was "1 full year of graduate level education or superior academic achievement." (Doc. 14-3 at 3; Doc. 24-6 at 4). According to her resume, Prince had 22 credit hours towards a Master's Degree from the University of Nevada–Las Vegas. (Doc. 24-7 at 8). There is no evidence in the record from which the Court can determine if 22 credit hours satisfies the full level of graduate level education or even what constitutes "superior academic achievement." The hiring of an unqualified White applicant over a qualified Black applicant would indicate that race played a part in the selection.

Next, that Prince was a personal friend who Clark encouraged to apply is not evidence that race played any part in the selection. In fact, it indicates that Prince was selected for a completely non-race based reason. Nor does Plaintiff's assertion that Clark "infantilized [Plaintiff] by comparing her to a newborn," by itself, show a racial taint to the decision. (Doc. 24 at 13). Clark does not deny that she made the statement, but testified that she used the toddler analogy because two of the Human Resource Specialists in her department, Cruz and Samuel, were "fairly new in their positions. And although they had some experience, they also came in at the time [the department was] were short-staffed. So they had been self-learning in a lot of ways." (Doc. 18 at 43:16–19). Thus, Clark said that she used the analogy to explain that hiring someone like Plaintiff, who had limited experience, to work with Cruz and Samuel would have been,

> like a mother that has two toddlers in her home and she has a newborn. She would not trust the two toddlers to ensure the safety and security of the newborn. Just like with employees, if you have two employees that are still learning how to walk themselves in high expectation level and still learning themselves, it would be unfair to the individual coming in that would be equivalent to a

13

>     newborn with no experience in that particular position
>     to be expected to train that position and have overall
>     success.

(*Id.* at 43:2–13).

The Court, however, is charged with construing the evidence in the light most favorable to Plaintiff and to not grant summary judgment if there is a question that race played any part in the selection process. Doing so and accepting—for purposes of this motion only—that Prince, a White woman, was not qualified for the position and was selected over Plaintiff, a qualified Black woman and that Clark made what Plaintiff believes to be a racially charged comment to Plaintiff, a reasonable jury could find that race tainted the selection process. Accordingly, as Plaintiff has failed to establish that race or sex were "but-for cause[s] of her non-selection, she is not entitled to damages stemming from her non-selection;" and Defendants are entitled to summary judgment to the extent that Plaintiff seeks retrospective relief. *Terrell* at 1352. However, to the extent that Plaintiff seeks "injunctive or other forward-looking relief;" summary judgment is not appropriate. *Id.*

## CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment (Doc. 14) is **GRANTED in part** and **DENIED in part**.

**SO ORDERED**, this 29th day of September, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**